DA 12-0559

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 76N

IN THE MATTER OF:

K.M. and R.M.

    Youths in Need of Care.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause Nos. DN-10-015 and DN-10-016
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Elizabeth Thomas, Attorney at Law, Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Katie F. Schultz, Assistant
Attorney General, Helena, Montana

    Anne Sheehy Yegen, Assistant Attorney General, Child Protection Unit,
Billings, Montana

Submitted on Briefs:  February 20, 2013

Decided:  March 26, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion to the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Mother appeals the order terminating her parental rights to her two minor daughters on the ground that the State failed to make reasonable efforts to assist her in successfully completing her treatment plan.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The Department of Health and Human Services, Child and Family Services Division (CFSD) has been involved with J.L. (Mother) and J.M. (Father) since 2006 when their two older children were removed and permanently placed in kinship foster care. In March 2009, Mother gave birth to R.M. CFSD remained actively involved with the family as a result of multiple reports alleging physical neglect of the newborn. During this time neither parent consistently complied with CFSD's orders or instructions. In May 2010, K.M. was born.

¶4 In July 2010, Mother and Father went out of town for several days leaving R.M. and infant K.M. with babysitters. Mother, who had a prescription for and regularly used methadone, instructed the babysitter to give liquid methadone to K.M. because she feared

2

the baby would go into withdrawal while she was away and not breast-feeding. The authorities were notified but by that time K.M. had received methadone doses for four days. K.M. was hospitalized and released two days later. Both girls were removed from the home. In August 2010, the children were returned to their parents under CFSD's Temporary Investigative Authority.

¶5 In March 2011, the children were adjudicated youths in need of care and the State was granted temporary legal custody of the children but they continued to reside in the family home. In May 2011, the District Court approved and ordered treatment plans for Mother and Father. Mother and Father thereafter separated. In August 2011, after CFSD received a corroborated report that Mother was using intravenous drugs, the children were again removed from Mother's care. In October 2011, Mother's Treatment Plan was extended to give her more time to complete the required goals and tasks, one of which was reunification with the children.

¶6 In April 2012, the State petitioned for permanent legal custody and termination of both parents' parental rights on the grounds that the parents had not successfully completed their treatment plans and were unlikely to do so within a reasonable time.

¶7 On July 13, 2012, the District Court conducted the first day of the termination hearing. Father relinquished his parental rights and consequently is not a party to this appeal. Following a full day of testimony, the hearing was continued to August 6, 2012.

¶8 On August 17, 2012, the District Court issued its Findings of Fact, Conclusions of Law, and Order Terminating Mother's Parental Rights and Granting Permanent Legal Custody to Department, With Right to Consent to Adoption to both children. Mother

3

appeals, arguing the State failed to make reasonable efforts to assist her in successfully completing her treatment plan. Notably, she does not appeal the District Court's conclusion concerning adjudication of the children as youths in need of care, her failure to comply with her Treatment Plan or her lack of success, or whether her conduct rendering her unfit was likely to change in a reasonable time. Addressing Mother's allegation that the State failed to assist her in successfully completing the Treatment Plan, we disagree for the following reasons.

¶9 The record indicates that CFSD continued working closely with Mother from shortly after R.M.'s birth in March 2009 until April 2012 when it petitioned for termination. It provided resources to Mother to address her chemical dependency needs, her mental health concerns and her parenting skills. The agency reported that Mother frequently failed to attend meetings, was often uncooperative and belligerent, and continued using drugs. She routinely refused mandatory random UA drug testing or was unavailable for testing. She was witnessed (and videotaped) using intravenous drugs in a public grocery store bathroom. Additionally, she was charged with theft for allegedly pawning stolen items. She failed to maintain consistent contact with her social worker and failed to attend, or arrived late for, many counseling sessions. These failures are not the fault of CFSD; these failures are Mother's for which she alone is responsible. The agency worked with Mother for two years and concluded that the behavior that rendered her unfit to parent her children showed no signs of improving in a reasonable time. The District Court complied with the applicable statutes, including but not limited to,

4

§ 41-3-609(1)(f)(i) and (ii), MCA, and the State met its burden under § 41-3-422(5)(a)(iv), MCA.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted. Furthermore, there was no abuse of discretion.

¶11 We affirm.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS